IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARK ALAN LANE,

          Petitioner,

   v.

MARION FEATHER,
Warden,

          Respondent.

Civil No. 3:12-cv-02360-MC
3:13-cv-00005-MC
3:13-cv-00100-MC

OPINION AND ORDER

McSHANE, Judge.

Petitioner brings these habeas corpus actions pursuant to 28 U.S.C. § 2241. The matters are before the Court on remand from the Ninth Circuit Court of Appeals. *See Lane v. Feather*, 610 F. App'x 628 (9th Cir. 2015). For the reasons that follow, the Petitions for Writ of Habeas Corpus are DENIED.

1 - OPINION AND ORDER

## **PROCEDURAL BACKGROUND**

Petitioner is currently an inmate in the custody of the Bureau of Prisons ("BOP") at the United States Penitentiary at Leavenworth, Kansas. At the time he filed his original petitions in this court, he was incarcerated at the Federal Correctional Institution in Sheridan, Oregon ("FCI Sheridan").

Petitioner filed three petitions alleging that the BOP violated petitioner's due process rights in prison disciplinary proceedings. *Lane v. Feather*, Case No. 3:12-cv-02360-PA; *Lane v. Feather*, Case No. 3:13-cv-0005-PA; *Lane v. Feather*, Case No. 3:13-cv-00100-PA. In each case, petitioner challenged a Disciplinary Hearing Officer ("DHO") finding that petitioner violated BOP Prohibited Act Code 203, 28 C.F.R. § 541.3 Table 1, 203 ("Section 203"), which prohibits prison inmates from threatening another with bodily harm. Specifically, petitioner alleged the BOP did not have "some evidence" to support a finding of a Section 203 violation. District Judge Owen M. Panner found there was some evidence to support the violations, and denied the petitions.

Petitioner appealed, arguing for the first time on appeal that the BOP's application of Section 203 violated his First Amendment rights. The three cases were consolidated, and in *Lane v. Feather*, 610 F. App'x 628 (2015), the Ninth Circuit vacated Judge Panner's judgments and remanded the cases to this court.[1]

---

[1]The Ninth Circuit simultaneously reversed and remanded to the Central District of California three other habeas cases where petitioner challenged prison disciplinary proceedings for violating Section 203. *See Lane v. McGrew*, Case No. 2:13-CV-08448-GW-PLA, 2016 WL 8737522 (C.D. Cal. Dec. 7, 2016), *report and recommendation adopted by* 2017 WL 1395602 (C.D. Cal. Apr. 14, 2017)*, Lane v. Tews*, Case No. CV 2:14-CV-01324-GW-PLA, 2016 WL 8738265 (C.D. Cal. Dec. 7, 2016), *report and recommendation adopted by* 2017 WL 1423700 (C.D. Cal. Apr. 14, 2017); and *Lane v. Tews*, Case No. 2:14-CV-04876-GW-PLA, Second

The Ninth Circuit reasoned that before determining whether "some evidence" supported the DHO's findings that petitioner violated Section 203, the court needed to first resolve the definition of "threat" for the purposes of Section 203. *Lane*, 610 F. App'x at 629. The Ninth Circuit concluded that Section 203 "should be interpreted to prohibit all threatening statements, whether they amount to true threats or not." *Id*. This interpretation of the word "threat" implicated petitioner's First Amendment rights. As such, the prohibition against threatening bodily harm against another in outgoing prisoner mail found in Section 203 could only be valid if it satisfied the test set forth by the Supreme Court in *Procunier v. Martinez*, 416 U.S. 396, 94 S. Ct. 1800 (1974). *Id*. Upon finding that the record was not sufficient to make such a determination, the Ninth Circuit remanded the matter to this court "to determine whether Section 203 satisfies *Procunier*." *Id.* Because the matter was vacated and remanded based on petitioner's First Amendment argument, the Ninth Circuit did not reach petitioner's alternative challenges. *Id.* at 629 n.2

## FACTUAL BACKGROUND

### I. 2008 Disciplinary Proceeding - Case No. 2:12-cv-02360-MC

In 2008, while petitioner was housed at the United States Penitentiary in Atlanta, Georgia, petitioner was charged in an incident report with threatening another person in violation of Section 203. The reporting officer described the violation as follows:

> On December 16, 2008, at 10:20 a.m., I opened an electronic mail message forwarded from Central Office regarding an Administrative Remedy Appeal filed by [petitioner]. The attachment received included the Central Office Administrative Remedy Appeal form, and two handwritten notes from

---

Report and Recommendation (ECF No. 62, Dec. 7, 2016), *report and recommendation adopted* by Order Accepting Second Report and Recommendation (ECF No. 64, Apr. 14, 2017).

[petitioner]. It reads "I don't think my judgment and commitment was 'verified' I'm going to bet my life! Are you willing to bet a Guard's life?" This communication relays intent to inflict physical or other harm on any occasion.

Resp. Exh. 1, Moran Decl. ¶ 4, Att. 4.

The DHO conducted a hearing and found petitioner guilty of the charged offense. The DHO ordered petitioner to forfeit 27 days of good time credit, imposed 30 days of disciplinary segregation, and took away petitioner's telephone privileges for 180 days.

## II.     2009 Disciplinary Proceeding - Case No. 3:13-cv-00100-MC

In June 2009, while housed at the Federal Correctional Institution in Bennetsville, South Carolina, petitioner was charged in an incident report with threatening another person with bodily harm in violation of section 203. The reporting officer described the violation as follows:

> At approximately 8:30 pm on 5/31/09, while monitoring outgoing mail, I read two letters written by [petitioner]. The first letter was addressed to Brian Dempsey. . . . On page one of the letter [petitioner] writes "I give the Bureau of Prisons staff a chance to follow orders from the Civil Rights Division. I don't want to, I may be forced to take a life! Pray for me, that's the last thing I want to do is cause the next person harm." Furthermore, on page 5 he writes, "The warden can be reached at (843) 454-8200, Mr. Morrison and Mr. Blackington! I really don't like it when people play games or make an attempt on my life! Will I need to put on a pair of shit kickers? <u>Cross That Line</u>!! (Try to take my life).
> The second letter was addressed to U.S. District Court, Clerk, 304 Federal Building, 101 NW MLK Jr. Blvd., Evansville, IN 47708. On the back of page six [petitioner] writes "When the deal goes done! (sic) I want to make sure they come for you and Mr. Brad Blackington. (Criminal charges)."

Resp. Exh. 2 (ECF No. 12), Decl. of Jerrie Comstock, Att. 4.

In a postscript to the second letter, petitioner added: "That steel does damage to the human body! I personal (sic) know! I had to put some work in at Greenville. The Fucker bled like a stuck pig."

*Id.*, Att. 5.

At the disciplinary hearing, petitioner stated he was "not trying to get anything construed as a threat." *Id*. The DHO considered petitioner's statement, but did not find it credible in light of the statements contained in petitioner's letters. *Id*. The DHO report explained his reasoning:

> The DHO considered your statement, "I'm not trying to get anything construed as a threat." When the letter to the U.S. District Court was addressed during the hearing, you were notified this type of behavior can be construed as new criminal conduct as you were threatening a government official as noted in your letter. Mr. Blackington is an Assistant United States Attorney. Although you indicated you were threatening criminal charges, not bodily harm, the later part of the page stated, "PS That steel does damage to the human body! I personal know!! (smile face) I had to put some work in at Greenville (smile face) That Fucker Bled like a stuck hog!! The Guard asked that I just walk away and leave it alone."
>
> The first portion of the page threatened criminal charges, however, the second portion of the page threatened bodily harm by annotating you have put steel (weapon) in another individual while at Greenville and emphasized the weapon inflicted serious damage on the human body. There are not other connotations that can be drawn from this statement other than when you stated to Mr. Blackington you wanted to make sure they come for him and steel can do damage to a body is a threat to inflict bodily harm. Furthermore, in the first letter to Mr. Dempsey you threatened to take a life, and put on a pair of "shit kickers." You further stated "<u>Cross that Line</u>" which is also considered a threat as you are threatening Mr. Morrison and Mr. Blackington to cross that line and you would threaten to take a life and put some "shit kickers" on to seek retribution.

*Id*. The DHO found petitioner committed the prohibited act of threatening another with bodily harm and sanctioned petitioner to forfeiture of 27 days of good conduct time and 30 days of non-vested good conduct time, 30 days of disciplinary segregation, and loss of commissary privileges for 365 days. *Id*.

### III. 2010 Disciplinary Proceeding - Case No. 3:13-CV-00005-MC

In December 2010, while housed at the Federal Correctional Institution in Butner, North Carolina, petitioner received an incident report charging him with threatening another person

5 - OPINION AND ORDER

with bodily harm in violation of section 203. The reporting officer described the incident as follows:

> On 12/15/10, at 9:00 a.m., an SID investigation was completed which concluded that on 12/7/10, 9:57 a.m., the U.S. Marshals Service out of the Southern District of Indiana notified the LCSI SIS Officer that [petitioner] authored a threatening letter addressed to the Senate Judiciary Committees, and Representative Mike Pence from Bradley Blackington, Assistant U.S. Attorney Southern District of Indiana.
>
> In the contents of the letter, [petitioner] states, "I want to expose this criminal matter! The Bureau of Prisons may not take action. I may be forced to protect myself and take a life. I'm doing my best to avoid trouble. I will never let the Federal Government violate my rights, and not take action." Based on the statements, [petitioner] displays a threatening intent to cause deadly harm.
>
> During the SIS investigation, [petitioner] was questioned about the letter. [petitioner] admitted authoring the letter but denied it was threatening. When questioned, who's (sic) life he [petitioner] was planning on taking or harming? [petitioner] simply stated, "I can't predict the future." Based on the content of the letter, [petitioner] expresses a threatening message that he will kill or cause deadly harm while incarcerated if his judiciary request is not reviewed and during questioning [petitioner] did not deny his intent of "taking a life."

Resp. Exh. 3 (ECF No. 12, 12-4), Decl. of Jeffrey Tilley, Att. 3.

At the disciplinary hearing, petitioner stated, "Yeah, I wrote it. It's a statement of self-defense, not a threat of bodily harm." *Id.* at 2. The DHO did not find petitioner's explanation of self-defense credible, explaining his reasoning as follows:

> Your assertion that you wrote a statement of self-defense was considered, but was insufficient to excuse you from the offense. Without question, you communicated an intent to inflict bodily harm on another person by writing that you may be forced to protect yourself and take a life, which constituted a threat that could not be overlooked or excused under any circumstance. You were even given the opportunity to expound on your denial and explain your remarks if you believed you they had been somehow misconstrued when Officer Grimaldo asked whose life you were planning on taking or harming. Instead, you reiterated your warning by saying that you couldn't predict the future.

*Id*. The DHO found petitioner violated Section 203 and sanctioned petitioner to forfeiture of 27 days of good conduct time, 15 days of disciplinary segregation, loss of phone privileges for 18 months, and loss of one year of Trulincs (email) privileges. *Id*.

## **DISCUSSION**

### I.     Scope of Remand

As noted, the Ninth Circuit remanded these cases to this court to determine one issue: whether Section 203 satisfies the two-part test set forth in the Supreme Court's opinion in *Procunier*. Notwithstanding the limited nature of the Ninth Circuit's remand, petitioner asks the court to address two additional issues: (1) whether the BOP's interpretation of Section 203 constituted a new substantive rule promulgated without the notice-and-comment or articulated rationale required by Sections 533 and 706 of the Administrative Procedure Act; and (2) whether the BOP's regulation, as applied to petitioner's statement, is void for vagueness because it does not provide adequate notice of the prohibited conduct and invites arbitrary enforcement by BOP staff.

The court declines to address these issues. Addressing the additional issues that petitioner has identified would violate the rule of mandate. "The rule of mandate requires a lower court to act on the mandate of an appellate court, without variance or examination, only execution." *United States v. Garcia-Beltran*, 443 F.3d 1126, 1130 (9th Cir. 2006) (quoting *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895)). Thus, in the instant matter, the Court cannot address the additional issues raised by petitioner if doing so would exceed the boundaries as delineated by the mandate. *Salazar v. Ryan*, 194 F.Supp.3d 931 (9th Cir. 2016).

## II.   *Procunier v. Martinez* **Analysis**[2]

In *Procunier*, the Supreme Court established that prison officials cannot censor outgoing inmate mail merely because it contains exaggerated complaints, magnified grievances, expressions of inflammatory political, racial, or religious views, unwelcome criticism of policies, rules, or officials, or disrespectful comments. *Williams v. Fox*, 2017 WL 916432, at *4 n.1 (D. Idaho Mar. 7, 2017). Thus, a regulation restricting prisoners' exercise of their First Amendment right to send mail to non-prisoners must meet two criteria under *Procunier*: (1) the regulation must "further an important or substantial governmental interest unrelated to the suppression of expression;" and (2) the limitation on First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved. *Procunier*, 416 U.S. at 413.

The first requirement under *Procunier* is that a regulation restricting prisoners' outgoing mail must further an important or substantial government interest not related to the suppression of expression. *Procunier*, 416 U.S. at 413. In *Procunier*, the Supreme Court identified three such governmental interests that might justify restrictions on outgoing prisoner mail: security, order, and rehabilitation. *Id*. at 413. A prisoner has an unrestricted right to send outgoing mail unless the content of the mail falls into categories presenting a threat to one the three legitimate interests

---

[2]Although the Ninth Circuit unequivocally instructed this Court to apply the two-part test set forth in *Procunier*, Respondent urges the Court to ignore this directive and, instead, evaluate petitioner's claim under the test announced in *Turner v. Safley*, 482 U.S. 78 (1978). In light of the Ninth Circuit's unequivocal direction, however, and the fact that Ninth Circuit precedent establishes that *Procunier*, not *Turner*, is controlling in cases involving First Amendment challenges concerning outgoing correspondence sent by prisoners, Respondent's argument is not well taken. *See Barrett v. Belleque*, 544 F.3d 1060, 1062 (9th Cir. 2008) ("*Procunier* is controlling law in the Ninth Circuit and elsewhere as applied to claims involving outgoing prisoner mail").

including, but not limited to, "escape plans, plans related to ongoing criminal activity, and threats of blackmail or extortion." *Thornburgh v. Abbott*, 490 U.S. 401, 412 (1989).

Respondent contends that Section 203 prohibiting prisoners from "threatening another with bodily harm" furthers several governmental interests discussed in *Procunier*. First, the prohibition against threats advances institutional security, because the issuance of threats creates an atmosphere of hostility and disrespect, even if the threats are not intended to be acted upon. Second, the prohibition shields outside recipients from communications by inmates that threaten violence towards another person. Finally, by prohibiting threats, inmates are compelled to use positive communication skills and encouraged to use mature, non-violent means to express their concerns or grievances, which aids in rehabilitation. Moreover, Respondents note that prison rules prohibiting threats have already been found valid under *Procunier*. *See Barrett Belleque*, 475 Fed.Appx. 653, 2012 WL 1145270, at *1-2 (9th Cir. 2012) ("[r]ules prohibiting inmates from directing disrespectful comments toward staff indisputably further legitimate penological interests in security, order[,] and rehabilitation") (citation omitted). Accordingly, Section 203 satisfies the first part of *Procunier*.

Under the second prong of *Procunier*, the limitation must be no greater than necessary to further the particular government interest involved. *Procunier*, 416 U.S. at 413. The challenged regulation is valid only if it limits the inmate's First Amendment freedoms no more "than is necessary or essential to the protection of the particular governmental interest involved." *Id*. This does not mean that prison officials' decisions are subject to a strict "least restrictive means test." *Abbott*, 490 U.S. at 411. Instead, *Procunier* "require[s] no more than that a challenged regulation be 'generally necessary' to a legitimate governmental interest." *Abbott*, 490 U.S. at 411 (quoting

*Martinez*, 416 U.S. at 414). *Procunier* does, however, require "a close fit between the challenged regulation and the interest it purport[s] to serve." *Id*.

Notwithstanding the rigor of the *Procunier* test, courts must afford administrators some latitude in anticipating the probable consequences of allowing certain speech in the prison environment. *Procunier*, 416 U.S. at 412. Accordingly, prison officials are not required to show with certainty that any particular correspondence would have adverse consequences. *Id*.

This Court agrees with the Magistrate Judge Abrams' conclusion that Section 203's prohibition against threatening another with bodily harm is necessary to ensure security and order within the prison. *Lane v. Tews*, 2016 WL 8738265, at *9; *Lane v. McGrew*, 2016 WL 8737522, at *9. The regulation prohibits inmates only from threatening to commit acts of violence against other people; it does not prohibit inmates from expressing in outgoing mail their dissatisfaction with prison official or the prison system, including in ways that might strike people as crude, vulgar, and offensive.[3] Given the regulation's limited reach, it is sufficiently tailored to accommodate petitioner's freedom of expression, while allowing prison officials to ensure prison security. Moreover, the regulation is sufficiently related to the legitimate goal of rehabilitating prison inmates.

Petitioner has not established that the prison disciplinary proceedings against him violate the First Amendment. Accordingly, petitioner is not entitled to habeas corpus relief under 28 U.S.C. § 2241, and his Petitions must be denied.

---

[3]Courts have consistently refused to uphold regulations restricting outgoing mail based on concerns about prison security and order where the correspondence merely contains disparaging, derogatory, or false remarks about a prison official. *See Lane v. Tews*, 2016 WL 8738265, at *6-7 and *Lane v. McGrew*, 2016 WL 8737522, at *6-7 (collecting and discussing cases).

## CONCLUSION

Petitioner's Petitions for Writ of Habeas Corpus are DENIED, and these cases are DISMISSED.

IT IS SO ORDERED.

DATED this 22nd day of September, 2017.

      /s Michael J. McShane
      Michael McShane
      United States District Judge